Filed 7/23/14

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENNETH CHARLES RADER,<br><br>    Defendant and Appellant. | B247088<br><br>(Los Angeles County<br>Super. Ct. No. KA098088) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Victor D. Martinez, Judge. Affirmed in part; reversed in part; modified in part with directions.

    Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

    Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

---

    [*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110(a), parts I, II, and III (A)-(C) and IV are certified for publication.

# I.  INTRODUCTION

Defendant, Kenneth Charles Rader, enjoyed a meal at a steakhouse and then paid $100 of the bill with counterfeit $20 bills.  He left the restaurant and was arrested shortly thereafter.  He stands convicted of:  one count of second degree burglary (Pen. Code, § 459)[1]; two counts of felony theft (§§ 484, subd. (a) (484), 666); and two counts of forgery (§§ 472, 476).  Defendant admitted he had sustained a prior violent and serious conviction within the meaning of sections 666, subdivision (b)(1), 667, subdivisions (b) through (i) and 1170.12.  Defendant also admitted he had sustained prior nonviolent and nonserious theft-related felony convictions within the meaning of sections 666, subdivisions (a) and (b).  Defendant was sentenced to 5 years, 4 months in state prison.  In the published portion of this opinion, we hold defendant can only be convicted of a single count of theft.  Further, we conclude that defendant may be convicted of felony petty theft rather than the misdemeanor charge of defrauding an innkeeper (or in this case a restaurant).

# II.  THE EVIDENCE

On Friday, May 25, 2012, at approximately 2 p.m., defendant entered an Outback Steakhouse restaurant in the City of Industry.  Defendant was joined by a man identified only as Jeff.  When arrested later and interviewed in a nearby mall security office, defendant claimed the person identified only as Jeff was a nephew.  But when interviewed by a detective at a sheriff's station, defendant refused to provide any identifying information including the man's first and last name.  For convenience's sake, we shall refer to the otherwise unidentified individual who ate with defendant in the Outback Steakhouse as Jeff.  Jeff was accompanied by a young woman, Julian

---

[1] Further statutory references are to the Penal Code except where otherwise noted.

Fernandez. All three ordered food and drinks. The dinner bill came to $100.53. Someone paid the bill with five counterfeit $20 bills and two $1 bills.

Melissa Rodriguez had waited on defendant's table. Ms. Rodriguez did not see who left the cash. But she recognized the $20 bills as counterfeit. Ms. Rodriguez went outside. She saw defendant, Jeff and Ms. Fernandez walking across the restaurant parking lot into a mall. Ms. Rodriguez called out to them. Defendant turned his head slightly to look at Ms. Rodriguez. But he turned back and kept walking. Ms. Rodriguez described what happened next, "[Defendant] and the other two people that were with him started zigzagging in and out of cars." Defendant walked into the mall.

Ms. Rodriguez and the restaurant manager followed defendant into the mall. Ms. Rodriguez gave a description of the three individuals to a mall security guard. Ms. Rodriguez located Ms. Fernandez and summoned the security guard. As the security guard detained Ms. Fernandez, Ms. Rodriguez saw defendant exit one store and enter another. Defendant glanced in Ms. Rodriguez's direction, looked down and kept walking. Ms. Rodriguez, accompanied by a second security guard, approached defendant. The following transpired, according to Miss Rodriguez: "Q And then what happened? [¶] A I approached him. He was looking at shirts. He looked up and looked back down. And I then said, 'Excuse me.' And that's when he looked at me, and I said, 'We have your friend.' [¶] And that's when he said, 'I know. I heard something about that. What's going on?' [¶] . . . [¶] Q What happened next? [¶] A And I said, 'Oh, you know, we have a problem.' [¶] And he said, 'Okay. But I didn't pay the check.' [¶] . . . [¶] A I said, 'Okay. But can you just please come with us[?]' [¶] Q And what, if anything, did he do? [¶] A He followed." When Ms. Rodriguez asked defendant whether he could pay the restaurant bill, he said he did not have any money.

Ms. Rodriguez returned to the restaurant where she was met by Deputy Bob Chu. Ms. Rodriguez told Deputy Chu she had three customers who paid with counterfeit bills. Deputy Chu examined the five $20 bills and determined they were counterfeit. Deputy Chu and Ms. Rodriguez returned to the mall. Defendant was inside the mall security office. Ms. Rodriguez identified defendant as the person who had been in the restaurant.

3

Defendant was advised of his rights. Defendant agreed to talk to Deputy Chu. Deputy Chu testified: "[Defendant] told me that he was in the area because he saw the Outback Steakhouse right off the freeway. And he decided to go there and get some food. He said that - - he told me he went there to eat, and he did not have any money on him because he had spent his money buying gas going from Oceanside to Riverside." Defendant said Jeff paid the restaurant bill. Defendant said he did not know the $20 bills were counterfeit. Defendant said he did not see Ms. Rodriguez trying to stop him in the parking lot. Defendant said he was going to Sears to buy a car battery. Defendant did not have a car battery in his possession when he was detained.

Detective Alfredo Gomez was the detective assigned to the case. On May 26, 2012, Detective Gomez spoke with defendant in a jail cell. The interview, which lasted 10 to 15 minutes, was not recorded. Defendant was advised of his constitutional rights. Defendant agreed to speak with Detective Gomez. Detective Gomez testified he believed he was going to be lied to. Thus, while interviewing defendant, Detective Gomez decided to engage in a ruse. Detective Gomez described the ruse and defendant's response as follows: "I told the defendant that the arresting deputy didn't have an opportunity to view the surveillance video at the restaurant and that I did. And I told him I already knew what happened and I saw what happened and who paid for it. So then he admitted to me that he paid for the -- for the food." In fact, there was no surveillance video system at the restaurant. According to Detective Gomez, defendant made the following statement, "He told me his nephew Jeff had given him the money earlier in the day for gas and food." Defendant denied knowing the bills were counterfeit. Detective Gomez confronted defendant about having lied to Deputy Chu about paying for the food. Defendant said nothing in response when confronted about having lied to Deputy Chu. Detective Gomez then described his efforts to find out about the individual identified only as Jeff: "I wanted to go into trying to find out who Jeff was, his nephew, and he didn't want to give me any details, any identifying information as far as first name, birth date, last name, you know, so maybe I could speak to Jeff. And that's where I concluded the interview."

4

## III. DISCUSSION

### A. Procedural History

Many of the issues presented by the parties involve the interplay between sections 484, subdivision (a) and 666. We begin by setting forth the information's allegations concerning counts 2 and 3. In count 2, the information alleges in part: "On or about May 25, 2012 . . . , the crime of PRIOR [PETTY] THEFT-290/STRIKE, in violation of PENAL CODE SECTION 666(b), a Felony, was committed by [defendant], who did unlawfully and in violation of Penal Code section 484(a), steal take and carry away the personal property of OUTBACK STEAKHOUSE. It is further alleged that defendant was previously convicted in the State of California of the crime(s) listed below and served a term for each crime in a penal institution and was imprisoned therein as a condition of probation." The information alleges three nonviolent and nonserious felony convictions sustained in San Diego County: a January 21, 1993 conviction for violating Vehicle Code section 10851, subdivision (a) (case No. CRN23272); a June 23, 2004 conviction for receiving stolen property in violation of section 496 (case No. SCN180434); and a September 13, 2011 conviction for second degree burglary in violation of section 459 (case No. SCN278526). In addition, the information alleges as to count 2 defendant had sustained a prior violent or serious felony conviction on October 30, 1978, in San Diego County for robbery in violation of section 211 in case No. CRN5384. Finally, as to count 2, the information concludes, "It is further alleged that prison custody time for the offense is to be served in state prison."

Count 3 of the information alleges a theft count arising out of the same incident at the Outback Steakhouse against defendant: "On or about May 25, 2012 . . . , the crime of PETTY THEFT WITH 3 PRIORS, in violation of PENAL CODE SECTION 666(a), a Felony, was committed by [defendant], who did unlawfully and in violation of Penal Code section 484(a), steal[,] take and carry away the personal property of OUTBACK STEAKHOUSE. It is further alleged that defendant was previously convicted in the

5

State of California of the crimes listed below and served a term for each crime in a penal institution and was imprisoned therein as a condition of probation." The three San Diego County nonviolent and nonserious prior felony convictions are the same as those alleged in count 2–vehicle theft, receiving stolen property, and second-degree burglary. Count 3 does not reallege the prior October 30, 1978 San Diego County robbery conviction alleged in count 2. Unlike count 2, count 3 contains no allegation that any sentence must be served in state prison.

Prior to trial, defendant admitted all the allegations of four prior San Diego County convictions were true. In this way, defendant precluded the jury from learning of those prior convictions. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 480 ["Under established case law . . . applying [§§] 666, 1025, and 1093, defendant had a right to stipulate to the prior conviction and incarceration and thereby preclude the jury from learning of the fact of his prior conviction."]; *People v. Witcher* (1995) 41 Cal.App.4th 223, 233 [same].) Consistent with CALCRIM No. 1800, the trial court indicated it would not identify the charged offense as either a petty or grand theft when explaining the charges to the jury. With the consent of both counsel, the trial court stated, "I would not identify either as a petty theft or a grand theft, but it would just be going in as a theft as a felony."

The trial court stated that only one theft offense would be presented to the jury: "So based upon counsels' agreement, the jury will not be presented with the separate offenses based upon defendant's request of 666(a) and (b). Those will be considered sentencing issues for the court if the defendant is convicted of count 2 . . . . [¶] And the jury will not be making separate findings as to count 2 and 3 but will be relying upon the modified count 2, again which will only support a sentencing issue if the defendant is convicted." The trial court then directed the prosecutor not to mention the alleged prior convictions. The deputy district attorney, John F. Urgo, was advised to instruct the prosecution witnesses to make no mention of defendant's prior convictions. The case was presented to the jury after renumbering the counts to reflect there was a single theft charge. The jury was advised that: count 1 involved the burglary charge; count 2

6

involved only a single theft charge; count 3 charged defendant with forgery; and count 4 involved possession of a counterfeit government seal.

In compliance with the parties' agreement, the jury was instructed with a modified version of CALCRIM No. 1800.[2] The jurors returned a single verdict as to the renumbered theft charge in count 2, "We, the jury in the above-entitled action, find the defendant . . . GUILTY of the offense charged, to wit: the crime of THEFT, in violation of Penal Code section 484, a felony, as charged in Count 2 of the Information." But defendant was sentenced on two counts of petty theft. As to counts 1 through 4, defendant received a midterm sentence of two years. The trial court ruled, "Those counts will merge pursuant to Penal Code section 654." As to count 5, possession of a counterfeit seal, the trial court imposed a consecutive term of eight months. Thus, the trial court orally calculated the sentence of two years, eight months. The trial court doubled that term because of defendant's prior San Diego County robbery conviction for a total sentence of five years, four months. In the unpublished portion of the opinion, we discuss various sentencing issues.

### B. Pleading And Trying Two Petty Thefts

As noted, defendant stands convicted of two counts of petty theft for using counterfeit bills on a single occasion to pay for a meal. Defendant argues that he may not be charged in both counts 2 and 3 for the same petty theft. Defendant reasons that counts

---

[2] The jurors were instructed in connection with the theft charge: "The defendant is charged in count 2 with theft. [¶] To prove that the defendant guilty -- to prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took possession of property owned by someone else; [¶] 2. The defendant took the property without the owner's or owner's agent's consent; [¶] 3. When the defendant took the property, he intended to deprive the owner of it permanently; and [¶] 4. The defendant moved the property, even a small distance, and kept it for any period time, however brief. [¶] An agent is someone to whom the owner has given complete or partial authority and control over the owner's property. [¶] For theft, the property taken can be of any value, no matter how slight."

7

2 and 3 involve a single offense–the petty theft from the restaurant. (*People v. Bouzas*, *supra*, 53 Cal.4th at p. 469; *People v. Witcher*, *supra*, 41 Cal.App.4th at p. 233.) Because both counts involve a single offense, defendant argues either the conviction under count 2 or 3 must be vacated. We need not address any issue of pleading or trying count 3. As we will note, the judgment as to count 3 must be reversed.

Defendant correctly argues that section 666 does not define an offense; rather it is a sentencing provision. Our Supreme Court explained in some detail why section 666 is not an "offense" as follows: "Section 666 is -- and has been since 1872 -- part of title 16 of the Penal Code, which is directed primarily to sentencing and punishment matters, to the exclusion of statutes defining substantive crimes (see [*People v. Cooks* [(1965) 235 Cal.App.2d 6, [10] [history of former §§ 666 & 667]). This supports our conclusion that the Legislature has long intended that section 666 establishes a penalty, not a substantive 'offense.' [¶] The language of section 666 affirms this view. It is structured to enhance the punishment for violation of other defined crimes and not to define an offense in the first instance. It simply refers to other substantive offenses defined elsewhere in the Penal and Vehicle Codes and provides that if a defendant has previously been convicted of and imprisoned for any of these theft-related offenses, and thereafter commits petty theft (defined in section 484), the defendant is subject to punishment enhanced over that which would apply following a 'first time' petty theft conviction. [¶] In other words, a charge under section 666 merely puts a defendant on notice (see § 969 [prior convictions must be alleged in the information]) that if he is convicted of the substantive offense and if the prior conviction and incarceration allegation of section 666 is admitted or found true, he faces enhanced punishment at the time of sentencing. We conclude that, on its face, section 666 is a sentence-enhancing statute, not a substantive 'offense' statute.'" (*People v. Bouzas, supra,* 53 Cal.4th at pp. 478-479; see *People v. Shaw* (2009) 177 Cal.App.4th 92, 101.) Section 666 defines the potential penalties for petty theft with specified theft related prior convictions and incarceration requirements. (§ 666, subd. (a)-(b); *People v. Bouzas*, *supra*, 53 Cal.3d at p. 471 ["section 666 . . . provides that a defendant who has been convicted of and imprisoned for enumerated theft-related crimes

8

(certain misdemeanors and felonies) and who is subsequently convicted of petty theft 'is punishable . . . .'"]; *People v. Robinson* (2004) 122 Cal.App.4th 275, 281 ["Section 666 . . . is a discretionary sentencing statute which, upon the establishment of a qualifying prior conviction, allows the trial court to punish petty theft as either a felony or a misdemeanor."].) Thus, counts 2 and 3 charge the substantive offense of petty theft.

We agree defendant may not be convicted under both counts 2 and 3. When a single theft occurs at the same time as part of one transaction, only one conviction may be returned. In *People v. Nor Woods* (1951) 37 Cal.2d 584, 586-587, a used car dealer was convicted of two grand theft counts. The used car dealer took both a 1946 Ford and some cash in exchange for a 1949 Ford. The 1946 Ford was taken as a trade-in for the newer 1949 model. The used car dealer then failed to deliver the new 1949 Ford or to return the 1946 Ford and the money to the victim. Our Supreme Court held under these circumstances only a single theft occurred: "Defendant contends that at most he was guilty of the commission of one offense. We agree with this contention. It is unnecessary to determine under what circumstances the taking of different property from the same person at different times may constitute one or more thefts. (See *People v. Howes* [(1950)] 99 Cal.App.2d 808, 818-821, and cases cited.) In the present case both the car and the money were taken at the same time as part of a single transaction whereby defendant defrauded [the victim] of the purchase price of the 1949 Ford. There was, accordingly, only one theft . . . ." (*People v. Nor Woods*, *supra*, 37 Cal.2d at pp. 586-587; see *In re Johnson* (1966) 65 Cal.2d 393, 395; *People v. Neder* (1971) 16 Cal.App.3d 846, 853, fn. 3.) Our Supreme Court later characterized the decision in *Nor Woods* as holding the used car dealer was improperly convicted of two counts of theft rather than only one count. (See *People v. Correa* (2012) 54 Cal.4th 331, 339-340.) Here, counts 2 and 3 involve the same theft of the identical meal on a single occasion at the Outback Steakhouse on May 25, 2012. Thus, the judgment as to count 3 must be reversed. Upon remittitur issuance, count 3 is to be dismissed. We need not address defendant's remaining contentions concerning count 3.

9

## B.  Defendant May Be Convicted of Felony Petty Theft

### 1.  Defendant's contention

Defendant argues his count 2 four-year sentence (§§ 484, 666, subd. (b)) must be reversed because his conduct can only be prosecuted under section 537, subdivision (a), not section 484, subdivision (a).  Defendant relies on *In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*), and *People v. Fiene* (1964) 226 Cal.App.2d 305, 306 (*Fiene).* We disagree.

### 2.  The statutes

Both sections 484 and 537, subdivision (a) involve theft-related conduct.  Section 484 provides, "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, *defraud* any other person of money, . . . or personal property . . . is guilty of theft."  Where the value of the thing taken is less than $950, the offense is a petty theft.  (§§ 487, subd. (a), 488.)  Section 490 states, "Petty theft is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or both."  (§ 490.)  Petty theft is generally punished as a misdemeanor.  (§ 17, subd. (a); *People v. Williams* (2004) 34 Cal.4th 397, 404, fn. 4; *People v. Crossdale* (2002) 27 Cal.4th 408, 410-411.)

Section 537, subdivision (a), proscribes conduct including defrauding an innkeeper.  Section 537, subdivision (a), states in part:  "Any person who obtains any food [or] services . . . at a . . . restaurant . . . without paying therefor, with intent to *defraud* the proprietor or manager thereof . . . or who, after obtaining . . . food [or] services . . . at [a] . . . restaurant . . . absconds, . . . with the intent not to pay for his or her food . . . is guilty of a public offense punishable as follows:  [¶]  (1)  If the value of the . . . food . . . is nine hundred fifty dollars ($950) or less, by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for a term not exceeding

10

six months, or both." (Italics added.) The punishment for petty theft and defrauding an innkeeper are the same.

As noted, the prior conviction facet of section 666 is not an element of section 484. (*People v. Bouzas*, *supra*, 53 Cal.3d at pp. 478-479; see *People v. Shaw, supra,* 177 Cal.App.4th at p. 101.) Thus, a petty theft in violation of section 484, ordinarily a misdemeanor, may be elevated to a felony when charged as a petty theft with a prior conviction under section 666. (*People v. Williams, supra,* 34 Cal.4th at p. 404, fn. 4; *People v. Artis* (1993) 20 Cal.App.4th 1024, 1026.) But felony petty theft is not a substantively different offense than misdemeanor petty theft. The elements of petty theft as a misdemeanor or a felony are precisely the same. The difference between the misdemeanor and felony theft is not because they have different elements. It is because petty theft is made a felony because of a sentencing statute–section 666. Defendant was sentenced on count 2 pursuant to section 666, subdivision (b). At the time defendant committed the present offense, section 666, subdivision (b) stated: "Notwithstanding Section 490 [specifying the punishment for petty theft], any person [who has a prior violent or serious felony conviction, as specified in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7] who, having been convicted of petty theft . . . and having served a term of imprisonment therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, who is subsequently convicted of petty theft, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison." (§ 666, subds. (b) & (b)(1); Stats. 2011, ch. 39, § 21, eff. June 30, 2011.) Section 666 was amended effective January 1, 2014, i.e., subsequent to the present offense, to add "a conviction pursuant to subdivision (d) or (e) of Section 368" to the qualifying prior convictions in subdivisions (a) and (b). The amendment also made minor grammatical changes. (Stats. 2013, ch. 782, § 1.)

11

### 3.  The *Williamson* rule

In *Williamson,* our Supreme Court held:  "'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'"  (*Williamson, supra,* 43 Cal.2d at p. 654, citing *People v. Breyer* (1934) 139 Cal.App. 547, 550.)  We will discuss the "conflict" aspect of the *Williamson* rule shortly.  The general and special statutes must be construed to carry out the legislative objective.  (*Williamson, supra*, 43 Cal.2d at p. 655.)  The *Williamson* rule is further explained in *People v. Murphy* (2011) 52 Cal.4th 81, 86:  "Under the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute.  In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute.  (*Ibid.*)  'The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict.'  (*People v. Walker* (2002) 29 Cal.4th 577, 586.)  'The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent.'"  (Citing *People v. Jenkins* (1980) 28 Cal.3d 494, 505-506; accord, *People v. Walker, supra,* 29 Cal.4th at pp. 585-586.)

In *Williamson,* the defendant was charged with conspiring to act as a contractor without a license in violation of the general conspiracy statute, section 182, subdivision (a)(1).  The charged conspiracy was punishable as a misdemeanor or as a felony under section 182.  However, Business and Professions Code section 7030 specifically provided that conspiring to act as a contractor without a license was a misdemeanor.  Our Supreme Court held the specific statute controlled over the general one because, "To conclude that the punishment for the violation of section 7030 of the Business and Professions Code is stated in section 182 of the Penal Code, which deals with conspiracies in general, would be inconsistent with the designation of the particular conspiracy as a misdemeanor."  (*In*

12

*re Williamson, supra,* 43 Cal.2d at p. 655; see *People v. McCall* (2013) 214 Cal.App.4th 1006, 1012-1013.)

## 4. *Fiene*

In *Fiene, supra,* 226 Cal.App.2d at page 306, the defendant was convicted of violating former section 667—petty theft with a prior felony conviction. (Stats. 1941, ch. 106, § 11, pp. 1082-1083.)[3] The defendant had exited a restaurant without paying his bill. Division Four of this appellate district held section 537 (see Stats. 1959, ch. 1990, § 1)[4]), prevented the trial court from acquiring jurisdiction in the case. (*Fiene, supra,* 226 Cal.App.2d at pp. 307-308.) Both parties agreed the elements of section 537 were the same as those of petty theft in violation of section 484. The Attorney General argued, however, that the Legislature did not intend that section 537 apply when a defendant who committed a petty theft had a prior conviction that qualified him for greater penalty under section 667. The Attorney General asserted, "The Legislature . . . 'would not want to give less protection to . . . restaurant proprietors if the defrauding was carried out by a released felon.'" (*Fiene, supra,* 226 Cal.App.2d at p. 308.) The Court of Appeal disagreed. The Court of Appeal held the defendant's conduct came within a special statute—section 537. The *Fiene* opinion does not discuss how the theft and defrauding an innkeeper statutes were in conflict. The conflict issue was never raised nor discussed.

---

[3] In 1963, when the defendant in *Fiene* committed his offense, section 667 stated, "Every person who, having been convicted of any felony either in this State or elsewhere, and having served a term therefor in any penal institution, commits petty theft after such conviction, is punishable therefor by imprisonment in the county jail not exceeding one year or in the State prison not exceeding five years." (Stats. 1941, ch. 106, § 11, pp. 1082-1083.)

[4] In 1963, when the defendant in *Fiene* committed his offense, section 537 stated in part, "Any person who . . . after obtaining . . . food . . . at [a] . . . restaurant absconds, . . . without paying for his food . . . is guilty of a misdemeanor." (Stats. 1959, ch. 1990, § 1, p. 4597.)

13

The Court of Appeal reversed the judgment.  (*People v. Fiene, supra,* 226 Cal.App.2d at p. 308.)  *Fiene* has not been followed for this proposition in any published California case.


## 5.  *Artis*


As noted, the *Fiene* opinion never discussed the "conflict" element of a defense the accused's conduct is only subject to a more specific, less onerous offense.  Since *Fiene* was decided, courts have clarified that there must be a conflict between the general and specific offense in order for the accused to benefit.  For example, in *People v. Artis, supra,* 20 Cal.App.4th at pages 1025-1026, the defendant took a refrigerator from his leased apartment and sold it.  The defendant was charged with petty theft with a prior conviction under sections 484 and 666.  A section 995 motion to set aside the information on grounds defendant should have been prosecuted for embezzlement under section 507 was granted.  The Court of Appeal reversed the dismissal order.

Section 507 states in part, "Every person entrusted with any property as bailee, tenant, or lodger . . . who fraudulently converts the same or the proceeds thereof to his own use . . . is guilty of embezzlement."  The Court of Appeal for the Fourth Appellate District, Division One, held:  "Although Artis refers to his crime as a mere conversion, the Legislature has expressly declared it to be a form of embezzlement.  As embezzlement, it is theft.  (§ 490a.)  As theft it is chargeable as a violation of section 484 and, critical to Artis, it is an offense which may be elevated to felony status when charged as petty theft with a prior.  (§ 666.)  [¶]  . . .  [¶]  The starting point is whether the general and special statutes which include the same subject matter contain provisions which conflict.  (*In re Williamson*[, *supra,*] 43 Cal.2d [at p.] 654.)  In *Williamson,* a conflict existed because a special statute declared an offense to be a misdemeanor, while a general statute would permit the People to elevate the crime to a felony.  . . .  [¶]  . . .  [¶] Unlike the cases Artis cites, there are no conflicts between the elements to prove, or the punishment for, embezzlement under section 484 and embezzlement defined in section

14

507. Each is punished 'in the manner prescribed for theft of property of the value or kind embezzled.' (§ 514.) Thus, had Artis been a first-time theft offender, he would face a misdemeanor sentence for this 'petty' theft regardless of how it was charged. Because there is no conflict between these statutes, Artis currently may be charged under section 484 and thus is subject to the felony enhancing provisions of section 666." (*People v. Artis, supra,* 20 Cal.App.4th at pp. 1026-1027, fn. omitted; see 1 Witkin, Cal. Crim. Law (4th ed. 2012) Introduction to Crimes: Criminal Statutes, ch. I, § 77, p. 136 ["because there is no conflict between [section] 507 (embezzlement of property by tenant) and [section] 484 (general theft statute), tenant who embezzles property may be charged under either statute"].)

The *Artis* analysis, which clarifies the necessity of a conflict between the general and specific crimes, is consistent with other authority. While discussing the general/special statute jurisprudence, the Court of Appeal for the Third Appellate District explained: "As for the *Gilbert-Gasaway* interpretive principle of a special statute being the exception to a general one on the same subject, that principle's application has been described succinctly as pivoting on whether there are 'conflicts between the elements to prove, or the punishment for,' the statutes at issue. (*Artis, supra,* 20 Cal.App.4th at p. 1027.) If so, the special statute is considered an exception to the general statute. ([*People v.*] *Gilbert* [(1969)] 1 Cal.3d [475,] 479; *Gasaway* [*v. Superior Court* (1977) 70 Cal.App.3d 545,] 550.)" (*Bradwell v. Superior Court* (2007) 156 Cal.App.4th 265, 271.) We turn now to *Gilbert* and *Gassaway*, the two decisions cited *Bradwell*.

In *People v. Gilbert*, *supra*, 1 Cal.3d at pages 480-481, our Supreme Court explained the relationship between two misdemeanor welfare fraud and grand theft statutes. In *Gilbert*, the defendant was convicted of violating the general grand theft statute, a felony. Our Supreme Court held the more specific provision, a misdemeanor violation of former Welfare and Institutions Code section 11482,[5] was the greatest

---

[5] As it was in effect at the time pertinent to the *Gilbert* decision, former Welfare and Institutions Code section 11482 stated, "Any person other than a needy child, who

15

offense of which the defendant could be convicted.  Our Supreme Court then described the type of conflict *Williamson* was designed to mitigate:  "Inasmuch as the clause as to false statements applies only to statements made in *obtaining* unauthorized assistance, it follows that any conduct which violated that clause would also constitute a violation of the theft provision of the Penal Code.  This overlap of provisions carrying conflicting penalties typifies the kind of conflict which we envisioned in *Williamson*; it requires us to give effect to the special provision alone in the face of the dual applicability of the general provision of the Penal Code and the special provision of the Welfare and Institutions Code." (*People v. Gilbert*, *supra*, 1 Cal.3d at p. 481; accord, *Patterson v. Municipal Court* (1971) 17 Cal.App.3d 84, 89 [discussing the *Gilbert* conflict analysis in the context of an amendment to an accusatory pleading in welfare fraud case]; *People v. Superior Court (Fuller)* (1971) 14 Cal.App.3d 935, 949 [applying *Gilbert* conflict discussion in the context of Vehicle Code violations with varying penalties].)

In *Gasaway v. Superior Court*, *supra*, 70 Cal.App.3d at pages 547-548, the defendant was accused of four counts of welfare fraud occurring between October 1973 and March 1974.  (Former Welf. & Inst. Code, § 11483, subd. (2).[6])  The information was filed more than three years after three of the four alleged acts of welfare fraud.  The Court of Appeal ultimately held that the controlling statute of limitations for welfare fraud was three years.  But the statute of limitations for grand theft was three years from

willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid, or who, knowing he is not entitled thereto, attempts to obtain and or to continue to receive aid to which he is not entitled, or a larger amount than that to which he is legally entitled, is guilty of a misdemeanor." (Stats. 1965, ch. 1784, § 5, p. 4018.)

[6] As it was in effect between 1973 and March 1974, former Welfare and Institutions Code section 11483, subdivision (2) stated:  "Whenever any person has, by means of false statement or representation or by impersonation of another fraudulent device, obtained aid for child not in fact entitled thereto, the person obtaining such aid shall be punished as follows:  [¶] . . . (2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison for not less than one year or more than 10 years or by imprisonment in the county jail for not more than one year." (Stats. 1970, ch. 693, § 1, p. 1322.)

the *discovery* of the offense, not its commission. Thus, in the view of the Court of Appeal, the limitations period for theft, with its discovery statute of limitations, was more onerous than that for welfare fraud. That aspect of the holding is not controlling to our case. Rather, the relevant discussion in *Gasaway* relates to the conflict analysis in *Gilbert*.

In *Gasaway*, the Court of Appeal digested the conflict analysis in *Gilbert* thusly: "[I]n *People* v. *Gilbert, supra*, 1 Cal.3d 475 at page 479, the Supreme Court specifically held that 'welfare fraud cannot be prosecuted under section 484 of the Penal Code.' Gilbert was convicted of fraudulently obtaining more than $200 in aid to families with dependent children in violation of section 484 of the Penal Code. The court held that Welfare and Institutions Code section 11482, as a special provision of the Welfare and Institutions Code dealing with welfare fraud, precluded prosecution of such fraud under the older general theft provision of the Penal Code. [Citation.] 'As we stated in *In re Williamson*[, *supra,*] 43 Cal.2d [at page 654], "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." [Citations.]' (1 Cal.3d 475, at p. 479.) The court pointed out the conflict in the penalties provided for in Welfare and Institutions Code section 11482 (a misdemeanor) and Penal Code section 484 (a felony if over $200 is taken; see Pen. Code, §§ 19, 487, subd. 1, 489; see also *People* v. *Legerretta* [(1970)] 8 Cal.App.3d 928)." (*Gasaway v. Superior Court*, *supra*, 70 Cal.App.3d at pp. 549-550, fn. omitted.)

In *Gasaway*, the Court of Appeal noted in the case before it, there was no conflict in the penalties. The Court of Appeal explained: "Here, there is no conflict in penalties, since the penalty for violation of either [Welfare and Institutions Code] section 11483, subdivision (2) or Penal Code section 484 (see Pen. Code, § 489), is imprisonment in state prison for not more than 10 years or county jail for not more than one year. (Welf. & Inst. Code, § 11483, subd. (2); Pen. Code, § 489.)" (*Gasaway v. Superior Court*, *supra*, 70 Cal.App.3d at p. 550.) However, the Court of Appeal held that the theft

17

offense with a longer statute of limitations was the more onerous provision. As we will explain, no such issue is present here.

To sum up, the *Williamson* decision requires there be a conflict between the two provisions before the general and specific statutes jurisprudence can limit prosecutorial charging discretion. *Gilbert* exemplifies how a conflict can arise in the sentencing context. *Gasaway* explains when there is no conflict in the sentencing context. And *Artis* describes in the theft-related context how there is no conflict in the elements of an offense.

## 6. Conclusion

We respectfully disagree with the Court of Appeal's decision in *Fiene.* As noted, the information alleges in relevant parts in counts 2 and 3 that defendant "did steal[,] take and carry away the personal property of" the steakhouse. As to count 2, the jury was instructed in part: "The defendant is charged in Count 2 with theft. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took possession of property owned by someone else; [¶] 2. The defendant took the property without the owner's or the owner's agent's consent; [¶] 3. When defendant took the property he intended to deprive the owner of it permanently; [¶] AND [¶] 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief." Thus, as charged and as tried, the theft counts were premised on the following language in section 484, subdivision (a), "Every person who shall feloniously steal, take . . . the personal property of another . . . is guilty of theft." The information's allegations and instructions were premised on the theory defendant committed a petty theft by larceny. (See *People v. Gomez* (2008) 43 Cal.4th 249, 254-255; *People v. Davis* (1998) 19 Cal.4th 301, 305.) Theft is divided into two degrees, petty and grand theft. (§ 486; *People v. Crossdale* (2002) 27 Cal.4th 408, 410.) The demarcation between grand and petty theft is now $950. When the value of the property taken exceeds $950, the crime is grand theft. (§ 487, subd. (a); see *Breceda v. Superior Court* (2013) 215

18

Cal.App.4th 934, 953; *People v. Wade* (2012) 204 Cal.App.4th 1142, 1150.) The $950 differentiation between grand and petty theft was adopted effective January 1, 2011. (Stats. 2010, ch. 693, § 1; Cal. Const., art. IV, § 8, subd. (c)(1).) The punishment for petty theft is as follows, "Petty theft is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or both." (§490.)

The parties agree the following language in section 537, subdivision (a) covers the same conduct charged in the information. Section 537, subdivision (a) states in part: "Any person who . . . after obtaining . . . food . . . restaurant . . . absconds . . . therefrom with the intent not to pay for his or her food . . . is guilty of a public offense punishable as follows: [¶] (1) If the value of the . . . food . . . is nine hundred fifty dollars ($950) or less, by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for a term not exceeding six months, or both." When the value of the food taken exceeds $950, the defendant can be convicted of a felony. (§ 537, subd. (a)(2).) The $950 differentiation between section 537, subdivisions (a) and (b) was adopted effective January 25, 2010. (Stats. 2010, ch. 28, §27; Cal. Const., art. IV, § 8, subd. (c)(1).)

Defendant could be tried either for petty theft or a violation of section 537, subdivision (a)(1). The two offenses do not conflict. Both offenses permit conviction when food is taken and not paid for. When the food's value is $950 or below, the offense is a misdemeanor under sections 490 or 537, subdivision (a)(2). And the potential sentences for petty theft and a violation of section 537, subdivision (a)(1) are the same. Further, the general misdemeanor statute of limitations applies to both provisions when there is a taking of food. (§ 802, subd. (a).) There is no conflict in the elements, punishment or statutes of limitations. Hence, as there is no conflict between the petty theft statute and section 537, subdivision (a), the *Williamson* rule is inapplicable. (*People v. Gilbert*, *supra*, 1 Cal.3d at p. 481; *Bradwell v. Superior Court*, *supra*, 156 Cal.App.4th at p. 271; *People v. Artis*, *supra*, 20 Cal.App.4th at pp. 1025-1026; *Gasaway v. Superior Court*, *supra*, 70 Cal.App.3d at pp. 547-548.)

19

We now return to the *Fiene* decision. As noted, the *Williamson* conflict issue was not raised by the defendant. (*Fiene*, *supra*, 226 Cal.App.2d at p. 307.) Rather, the Attorney General raised the *Williamson* issue in this sole context: "However, the Attorney General, with commendable objectivity, raises a much more serious question, one which is raised for the first time in these proceedings, and, one which, we believe, requires a reversal of the judgment. [¶] The question presented is whether the existence of Penal Code, section 537 (the innkeeper statute), making it a misdemeanor to defraud an innkeeper, prevents the superior court from acquiring jurisdiction in this matter." (*Fiene*, *supra*, 226 Cal.App.2d at p. 308.) The Attorney General made a vague generalized non-factually supported legislative intent argument as to why the accused could be convicted of petty theft with a prior conviction. (*Ibid.* at p. 308.) At no time did the Attorney General argue section 537 was in conflict with the petty theft with a prior conviction statute.

Here, the Attorney General expressly raised the conflict issue. The language chosen by our Supreme Court in *Williamson* requires a conflict exist between the two offenses. And in the one half-century since *Fiene* was decided, the California Supreme Court and the appellate courts have specifically delineated what the conflict language in *Williamson* means. Thus, we are more persuaded by those decisions as to what constitutes a conflict in the statutes than we are by the analysis in *Fiene*, *supra*, 226 Cal.App.2d at pages 307-308. The trial court was thus free to sentence defendant for felony petty theft.

[Parts III(D)-(G) are deleted from publication.]

### D. Count 4

Defendant argues that under the *Williamson* rule, as discussed above, he could not be prosecuted under a general statute, section 476, because a special statute, section 648, applied. We disagree. Section 476 states, "Every person who makes, passes, utters, or

20

publishes, with intent to defraud any other person, or who, with the like intent, attempts to pass, utter, or publish, or who has in his or her possession, with like intent to utter, pass, or publish, any fictitious or altered bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of any real or fictitious financial institution as defined in Section 186.9 is guilty of forgery." Section 648 provides, "Every person who makes, issues, or puts in circulation any bill, check, ticket, certificate, promissory note, or the paper of any bank, to circulate as money, except as authorized by the laws of the United States, for the first offense, is guilty of a misdemeanor, and for each and every subsequent offense, is guilty of felony." With respect to counterfeit bills, section 476 penalizes the knowing possession or use of forged bills to defraud. (See *People v. Mathers* (2010) 183 Cal.App.4th 1464, 1467-1468; *People v. Franz* (2001) 88 Cal.App.4th 1426, 1454; *People v. Gutkowsky* (1950) 100 Cal.App.2d 635, 639; *People v. Walker* (1911) 15 Cal.App. 400, 403.) Section 648 is directed at circulating counterfeit bills with the intent that they circulate as money. (*People v. Burkett* (1969) 271 Cal.App.2d 130, 133; Cal. Crim. Law (The Rutter Group 2013-2104 ed.) Theft Crimes, § 8.72.) Sections 476 and 648 do not penalize the same conduct. Here, defendant was not charged with making, issuing or putting in circulation unauthorized money, as proscribed by section 648. Defendant was charged with passing a fictitious or altered bill with intent to defraud, as proscribed by section 476. There was no conflict within the meaning of the *Williamson* rule.

## E. Double Punishment Issues

There are sentencing issues which have been raised by the parties and by us. The trial court orally ordered that the sentences be merged as to counts 1 though 4 pursuant to section 654, subdivision (a): "Probation is denied and sentence is imposed as follows: As to counts 1 through 4 the defendant is sentenced to the midterm of two years. Those counts will merge pursuant to Penal Code section 654." As to count 5, forgery, the trial court imposed a consecutive term of 8 months. The trial court stated: "As to count 5, the

court is imposing a consecutive term which would be a term of eight months. . . . [A]nd as a result of the defendants' strike prior, that term in both of those counts are hereby doubled. Total term of five years and four months." Thus, pursuant sections 667, subdivision (e)(1) and 1170.12 subdivision (c)(1), the determinate stayed terms were doubled.

To begin with, the concept of merger has no application in the section 654, subdivision (a) context. (*People v. Miller* (1977) 18 Cal.3d 873, 884-887; *People v. Wein* (1977) 69 Cal.App.3d 79, 93; *People v. Mulqueen* (1970) 9 Cal.App.3d 532, 547.) The correct order is to impose a principal term of two years on count 2 and then stay the sentences under counts 1 and 4. (As noted, count 3 has been reversed and there will be no retrial.) (*People v. Pearson* (1986) 42 Cal.3d 351, 360; *In re Wright* (1967) 65 Cal.2d 650, 654.)

Defendant asserts his count 5 forgery conviction under section 472 should have been stayed pursuant to section 654, subdivision (a). Our review is for substantial evidence as to whether defendant had more than one intent and objective when he committed the present crimes. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731; *People v. Islas* (2012) 210 Cal.App.4th 116, 129.) We agree with the Attorney General that substantial evidence supports the trial court's decision *not* to stay defendant's count 5 forgery conviction under section 472.

Section 472 states: "Every person who, with intent to defraud another, forges, or counterfeits [any public seal of this State or the federal government], or who falsely makes, forges, or counterfeits any impression purporting to be an impression of any such seal, or who has in his possession any such counterfeited seal or impression thereof, knowing it to be counterfeited, and willfully conceals the same, is guilty of forgery." In the trial court, Deputy District Attorney Miriam Avalos argued: "[C]ount [5] is that the People have to prove that [defendant] possessed a counterfeit seal. And, again, we've proven he possessed the bills. [¶] The defendant knew the seal was counterfeit, and the defendant willfully concealed the fact that the seal was counterfeit. And when he

possessed the seal, he intended to defraud.  [¶]  Again, it all goes to the defendant and his state of mind."

As noted, defendant was interviewed by Deputy Gomez in the mall security office. Defendant claimed to have received the counterfeit bills from Jeff.  Defendant stated he had been given the counterfeit bills earlier in the day for gas and food. Deputy Gomez testified, "He told me his nephew Jeff had given him the money earlier in the day for gas and food."  The trial court could reasonably infer defendant possessed the counterfeit bills with multiple criminal objectives.  That is, defendant possessed the counterfeit bills not simply to acquire a free meal at the Outback Steakhouse, but also to acquire gasoline without paying for it.  This was substantial evidence defendant had multiple criminal objectives with respect to his possession of the counterfeit bills.  (See *People v. Neder, supra,* 16 Cal.App.3d at pp. 853-854 [defendant could be punished for multiple forgeries where codefendant used credit card to forge three separate sales slips for purchase of different goods]; compare *People v. Hawkins* (1961) 196 Cal.App.2d 832, 838 [defendant could not be punished for both signing or forging a single check and making or passing the same check].)

### F.  *Pitchess*

Defendant requested that we independently review the record of the trial court's in camera hearing for review of peace officer personnel records.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1232; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535.)  We have reviewed the transcripts of the in camera hearing.  The trial court did not abuse its discretion in any respect.  (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc, supra,* 26 Cal.4th at pp. 1228, 1232.)

23

G.  The Local Crime Prevention Programs Fine

The trial court could properly impose a $10 crime prevention programs fine (§ 1202.5, subd. (a)) together with penalties and a surcharge as follows:  a $10 state penalty (§ 1464, subd. (a)(1)); a $7 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $5 state court construction penalty (Gov. Code, § 70372, subd. (a)(1), Stats. 2011, ch. 304, § 5, eff. Jan. 1, 2012); a $1 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $3 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a), Stats. 2011, ch. 36, § 16, eff. June 30, 2011-June 26, 2012); a $2 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)); and a $2 state surcharge (§ 1465.7, subd. (a)).  The abstract of judgment must be amended to reflect the fine, penalties and surcharge.  (*People v. Hamed* (2013) 221 Cal.App.4th 928, 940 [abstract of judgment must list fines, penalties, surcharge]; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864 [superior court clerk must specify fines, penalties, surcharge in abstract of judgment].)

[The balance of the opinion is to be published.]

IV.  DISPOSITION

The judgment as to count 3 is reversed.  Upon remittitur issuance, count 3 is to be dismissed.  The judgment is modified to impose four Penal Code section 1465.8, subdivision (a)(1) court operations assessments in the sum of $160.  Further, the judgment is modified to impose only four Government Code section 70373, subdivision (a)(1) court facilities assessments in the sum of $120.  The abstract of judgment is to be so modified.  In addition, the abstract of judgment must be amended to include the $10 local crime prevention programs fine (Pen. Code, § 1202.5, subd. (a)) together with penalties and a surcharge as ordered by the trial court, specifically:  a $10 state penalty (§ 1464, subd. (a)(1)); a $7 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $5 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $1 deoxyribonucleic acid

penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $3 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)); a $2 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)); and a $2 state surcharge (§ 1465.7, subd. (a)). The clerk of the superior court is to deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

**CERTIFIED FOR PARTIAL PUBLICATION**


TURNER, P. J.


We concur:


KRIEGLER, J.



MINK, J.*

---

*       Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.