Filed: 1/29/15  P. v. Vanegas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAXIMILIANO VANEGAS, JR.,<br><br>    Defendant and Appellant. | B252522<br><br>(Los Angeles County<br>Super. Ct. No. NA091383) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur Jean, Jr., Judge.  Affirmed in part, modified in part, reversed in part and remanded for resentencing.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb, Jonathan M. Krauss and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant, Maximiliano Vanegas, Jr., of two counts of first degree murder (Pen. Code, § 187, subd. (a))[1] and one count of attempted premeditated murder (§§ 664, 187, subd. (a)).  The jury further found criminal street gang and firearm use enhancements to be true.  (§§ 186.22, subd. (b)(1)(C), 12022.53, subds. (d), (e)(1).)  Defendant was sentenced to life without the possibility of parole for the double murders (§ 190.2, subd. (a)(3)) and a concurrent 40 years to life for the attempted murder.  But because defendant was a 15-year-old minor when he committed these crimes, he was subject only to a 25-year-to-life sentence as to each first degree murder count.  We reverse the sentence and remand for resentencing including imposition of a parole revocation restitution fine (§ 1202.45).  We modify the judgment to include:  a $90 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)); a $120 court operations assessment (§ 1465.8, subd. (a)(1)); and 632 days of presentence custody credit.  We affirm the judgment in all other respects.

# II.  THE EVIDENCE

On January 30, 2012, around 9:10 p.m., Jairo Diaz and two friends, Carlos Regalado and Gabriel Castillo, walked to a liquor store and bought beer.  After leaving the store, they were confronted by several Latino gang members.  Some of the men were wearing beanies.  The gang members issued a gang challenge and made a derogatory reference to a rival gang.  Mr. Castillo was a former member of that rival gang.  Mr. Diaz and Mr. Castillo turned and ran back towards the liquor store.  Mr. Diaz heard 15 to 20 gunshots.  Mr. Castillo died from multiple gunshots wounds.  Mr. Castillo's body rested at the store's entrance.  Mr. Regalado died from a bullet wound to the head.  Mr.

---

[1]    Further statutory references are to the Penal Code except where otherwise noted.

Regalado's body lay in the street.  Mr. Diaz was shot five or six times but survived.  Mr. Diaz did not know and was unable to identify his assailants.

Manuel Poras witnessed the January 30 shooting.  At 1 a.m. on January 31, Mr. Poras spoke with a detective.  Mr. Poras said he saw a small, light-colored, four-door Honda park at the corner with its lights on, "couple guys came out" wearing hoods.  Mr. Poras was unable to recognize the gunmen.  The two assailants waited until the victims came out of the liquor store.  Further, Mr. Poras told the detective:  "And so I guess when [the victims are] coming out of the store across the alley, and [the assailants] caught them right there.  Surprised them, you know.  So I don't know if it was that first guy that went down by the car, they killed him first."  Mr. Poras saw one of the gunmen chase a victim out to the street.  Mr. Poras saw the unidentified gunmen shoot the victim.  The waiting Honda pulled around the corner, the two assailants ran to the car and jumped in and the car "took off."  The two assailants were Latino.  Based on the way they moved, Mr. Poras thought they were young, in their early 20s.  At trial, Mr. Poras similarly testified he heard the gunfire.  He saw two young Latino men.  Mr. Poras saw one of the men chase and shoot one of the victims.  The victim fell in the street.  The two men got into a four-door Honda, which sped away.

Ivan Zamora was the key prosecution witness.  At the time of the shooting, Mr. Zamora and defendant were fellow gang members who knew each other.  Mr. Zamora later left the gang and relocated out of the area.  Mr. Zamora had encountered defendant and three other gang members at dusk on January 30, 2012, the night of the shooting.  The four gang members were in a white, four-door Honda.  Defendant was in the back seat.  Defendant told Mr. Zamora they were going to rival gang territory to "put in work," in other words, kill rival gang members.  Mr. Zamora observed that the four gang members were armed with handguns including a .357-caliber weapon.  Mr. Zamora saw defendant the following day, January 31, 2012.  Defendant told Mr. Zamora:  the gang members had gone to rival gang territory to kill rival gang members; they saw rival gang members by a liquor store; they parked their car, got out and shot the rival gang members; and one victim dropped dead right by the store.

3

Investigators recovered four .22-caliber bullet casings at the scene of the shooting. The also found a bullet fragment and a wool beanie. The bullet fragment appeared to be of a caliber larger than a .22. A .38 or .357-caliber bullet was recovered from Mr. Regalado's body during an autopsy. A criminalist testified that as to the two calibers, "There is very little difference in the actual size."

Officer Robert Hargrove testified concerning gangs. Defendant's gang's primary activities included drug sales, shootings, attempted murder, murder and firearm possession. In response to a hypothetical question tracking the facts of this case, Officer Hargrove testified the shootings were committed for the gang's benefit.

## III. DISCUSSION

### A. Defense Motion for Opinion Testimony

Defendant contends the trial court abused its discretion and violated his constitutional rights by excluding testimony on the effects of methamphetamine on a person's ability to perceive and recall. We find even if the trial court abused its discretion, the error was harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Our Supreme Court has held, "The right to competent counsel under the federal and state Constitutions includes the right to 'reasonably necessary ancillary defense services.'" (*People v. Williams* (2006) 40 Cal.4th 287, 303; accord, *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319.) Evidence Code section 730 authorizes the trial court to appoint a person with special skill, knowledge, training and experience to render advice and testify. Evidence Code section 731 and Government Code section 29603 state that the county must pay for those court-ordered expenses. (*Corenevsky v. Superior Court, supra,* 36 Cal.3d 307, 318-319; *People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1303-1304, disapproved on another point in *People v. Martinez* (1995) 11 Cal.4th 434, 452, and *People v. Levesque* (1995) 35 Cal.App.4th 530, 539.) The burden is on the defendant to demonstrate a need for the

4

requested services. (*People v. Hajek* (2014) 58 Cal.4th 1144, 1255; *Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 320.) The decision whether to appoint a properly qualified witness to offer opinion testimony lies in the trial court's discretion. (*People v. Gaglione, supra,* 26 Cal.App.4th at p. 1304; *Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 321.) Our review is for an abuse of discretion. (*Ibid.*; see *Collins v. Superior Court* (1977) 74 Cal.App.3d 47, 52. )

At the October 15, 2012 preliminary hearing, Mr. Zamora admitted using crystal methamphetamine for three weeks upon encountering defendant before and after the shootings. He was still using crystal methamphetamine four days later when he told law enforcement investigators about those encounters. On April 23, 2013, four months prior to trial, defendant asked the trial court to appoint Dr. John Treuting. Dr. Treuting was to testify concerning the effects of crystal methamphetamine on a person's ability to perceive and recall events. Defendant's motion did not include any offer of proof as to Dr. Treuting's proposed testimony. The trial court denied the motion. In his pre-trial and post-trial arguments to the jury, defendant's attorney, Donald N. Kelly, emphasized Mr. Zamora's methamphetamine use.[2] At trial, Mr. Zamora testified he had been using

---

[2] In his opening argument to the jury, defendant's attorney, Mr. Kelly, argued in part: "[Mr. Zamora] will tell you that these guys in the car banged on him and he banged back. He will also tell you that these guys in the car banged on him and he didn't bang back. He will tell you that he either saw the defendant, Mr. Vanegas in the car, or he didn't. [¶] But he will also tell you he really couldn't be sure because he was tweaking. He will tell you what 'tweaking' means. That means being under the influence of methamphetamine. He will tell you he saw two guns in the car or saw three. He will tell you he saw four in the car with guns or two in the car with guns. [¶] . . . [¶] He will also tell you that at the time of this meeting of the fellows in this white Honda he had been tweaking. And he was 'twacked.' And he was 'twacked' on methamphetamine for three weeks. And he was 'twacked' on methamphetamine when he spoke to his detectives which was noted by the detectives before they commenced their interrogation of Mr. Zamora. They noticed his condition, how skinny he had become. He said he was stressed out. [¶] They asked him if he had been using methamphetamine. He said no. No, I wasn't using. I haven't been using methamphetamine. But he will tell you he had been because he testified to that under oath on a previous occasion[]. At that time and at the time of the meeting he had been twacked on methamphetamine. [¶] He will tell you

crystal methamphetamine on and off for three weeks, "[B]ut I know I did say what I saw." Mr. Zamora had not used drugs for six months prior to trial and his mind was clear. He was certain of the facts to which he testified. Detective Robert Hargrove testified concerning the effects of methamphetamine use. The detective said methamphetamine use makes an individual fidgety and more alert. Further, according to Detective Hargrove, "It gives [an individual] an inordinate amount of energy. It makes it harder to control [a person's] fine motor skills and tends to give [him or her] a paranoid, more alert sense of what's going on around them." Detective Hargrove denied ever encountering a person under the influence of methamphetamine who was experiencing delusions.

We need not decide whether the trial court abused its discretion in denying defendant's motion. Even if the trial did abuse its discretion, the error was harmless under any prejudice-based standard of reversible error. (*Chapman v. California, supra,* 386 U.S. at p. 24; *People v. Watson, supra,* 46 Cal.2d at p. 836.) There is no suggestion in the record that as a result of crystal methamphetamine use Mr. Zamora imagined, misperceived or misrecalled the details of the encounters with defendant. Mr. Zamora was acquainted with defendant, a fellow gang member. Mr. Zamora was certain of the facts to which he testified. Mr. Zamora testified about conversations with defendant which included facts about the perpetrators and the manner in which the crimes were committed. These facts were not known to the public. And when he testified at trial,

---

that he had been doing this for three weeks . . . . That he had barely gotten any sleep on and was re-hibernating and had his sleep canceled over that three-week period."

In his closing, rebuttal argument to the jury, Mr. Kelly reiterated his assertions as to Mr. Zamora's methamphetamine use. He also noted: "This is the same crystal methamphetamine that Officer Hargrove talked about, that makes you paranoid but not delusional. Like there is no such thing as a paranoid delusion. Your reality is, apparently according to Hargrove, your reality is not somehow twisted, or does not reflect what actual reality is. Methamphetamine has no influence on that. [¶] Now, we are talking about crystal methamphetamine that this fellow was on a binge with for three weeks. Three weeks."

6

defendant had been in drug rehabilitation and not used methamphetamine or other drugs for six months. Mr. Zamora was extensively cross-examined. The jury was instructed to consider several factors in evaluating Mr. Zamora's credibility, including his ability to remember what he witnessed. And defense counsel argued Mr. Zamora's methamphetamine use to the jury.

Moreover, Mr. Zamora's testimony concerning the encounters and conversations with defendant was corroborated by other witnesses. First, Mr. Zamora testified his fellow gang members were in a white, four-door Honda on the night of the shooting. Mr. Paros saw the assailants arrive at the liquor store and leave following the shooting in a light-colored, four-door Honda. Second, Mr. Zamora was a member of the gang that perpetrated the murders. The gang was from the west portion of the city. Mr. Zamora identified defendant as a fellow gang member. Officer Scott Coffee corroborated Mr. Zamora's identification of defendant as a gang member from that part of the city. Third, Mr. Zamora testified defendant said the gang members were going to the east side of the city to kill rival gang members. Mr. Diaz heard the assailants use a derogatory word for a rival east side gang just prior to the shootings. And one of the victims, Mr. Castillo, was a former member of the gang from the city's east side. Fourth, Mr. Zamora testified his fellow gang members were armed with weapons including a .375-caliber gun. A bullet matching that caliber was recovered from Mr. Regalado's body during an autopsy. Fifth, Mr. Zamora related defendant's description of the shooting. As noted above, none of the details of the crime had been made public. Defendant's description of the crime as related by Mr. Zamora was consistent other testimony. According to Mr. Zamora, defendant admitted the crimes were committed outside a liquor store. Mr. Diaz and Mr. Poras both testified the shooting occurred outside a liquor store. Also according to Mr. Zamora, the crimes were perpetrated by Latino gang members. Mr. Diaz and Mr. Poras both testified the perpetrators were Latino males. Defendant told Mr. Zamora one of the victims dropped dead right by the store. Mr. Castillo was gunned down at the entrance to the liquor store. And Mr. Regalado was killed in the street outside the liquor store. Given this record, exclusion of the proposed expert testimony—that methamphetamine

7

use may have affected Mr. Zamora's ability to perceive and recall—was harmless under any standard of prejudice-based reversible error. (See *People v. Wilson* (2008) 44 Cal.4th 758, 794; *People v. Sanders* (1995) 11 Cal.4th 475, 510.) Thus, there was no violation of defendant's federal constitutional rights. (See *People v. Lindberg* (2008) 45 Cal.4th 1, 26; *People v. Abilez* (2007) 41 Cal.4th 472, 503.)

## B. Defendant's Sentence

Defendant was sentenced for the first degree murders, counts 1 and 2, to life without the possibility of parole. (§ 190.2, subd. (a)(3).) The trial court also imposed a concurrent 40 years-to-life sentence for attempted premeditated murder, count 3. However, defendant was 15 years old when he committed the present crimes. Therefore, a sentence of life without the possibility of parole was unauthorized; defendant was subject to a 25-year-to-life sentence for first degree murder. (§ 190.5; *People v. Demirdjian* (2006) 144 Cal.App.4th 10, 17; see *People v. Mendez* (2010) 188 Cal.App.4th 47, 67; *In re Nunez* (2009) 173 Cal.App.4th 709, 727-728.) The matter will be remanded for resentencing after the remittitur issues as to counts 1 and 2.

The trial court imposed a $10,000 restitution fine. (§ 1202.4, subd. (b).) Because defendant's sentence as modified will allow for a potential period of parole, he is also subject to a parole revocation restitution fine in an equal amount. (§ 1202.45; see *People v. Rodriguez* (2000) 80 Cal.App.4th 372, 375-376; *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1255-1256.) Upon resentencing, the trial court is to impose a $10,000 parole revocation restitution fine.

In addition, the trial court orally imposed "$30, $40." Defendant was subject to a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) and a $40 court operations assessment. (§ 1465.8, subd. (a)(1).) These assessments apply to each count, for a total of $90 and $120 respectively. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 484-485; *People v. Castillo* (2010) 182 Cal.App.4th 1410, 1415, fn. 3 [court facilities assessment]; *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865-866 [court operations

8

assessment]; see *People v. Alford* (2007) 42 Cal.4th 749, 758, fn. 6.)  The abstract of judgment is correct in this regard.  And the judgment must be modified to so provide. (*People v. Rader* (2014) 228 Cal.App.4th 184, 200-201; *People v. Rosales* (2014) 222 Cal.App.4th 1254, 1263.)

The abstract of judgment reflects a sentence of 40 years to life on count 3.  It fails to reflect that a portion of that sentence, 25 years to life, was imposed under section 12022.53, subdivisions (d) and (e)(1).  The abstract of judgment should be so corrected after the remittitur issues.

The trial court gave defendant credit for 638 days in presentence custody. However, defendant was arrested on February 8, 2012,  and sentenced on October 23 (counts 1 and 2) and 31 (count 3), 2013.  Therefore, he is entitled to credit for 632 days in presentence custody, not 638.  The judgment must be modified and the abstract of judgment amended to so reflect.  (*People v. Miles* (2013) 220 Cal.App.4th 432, 437; *People v. Donan* (2004) 117 Cal.App.4th 784, 792-793.)

## IV. DISPOSITION

The sentence of life in prison without possibility of parole for counts 1 and 2 is reversed.  Upon resentencing after the remittitur issues, the trial court shall impose a $10,000 parole revocation restitution fine.  (Pen. Code, § 1202.45.)  The judgment is hereby modified to:  impose a $90 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)); impose a $120 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)); and award defendant credit for 632 days in presentence custody.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

MOSK, J.

KRIEGLER, J.