Filed 10/30/15  P. v. Liu CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SI H. LIU,<br><br>Defendant and Appellant. | B254655<br><br>(Los Angeles County<br>Super. Ct. No. GA090351) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Michael D. Carter, Judge.  Affirmed in part, as modified, and reversed in part.

Carla Castillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald D. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Si H. Liu of 22 theft-related counts connected to her scam of offering loan services to immigrants[1] (for which she charged sometimes as much as 60 percent of the loan value). Defendant took the victims' credit cards and identifying documents (such as driver's licenses and social security cards), ostensibly to verify their credit, and made unauthorized purchases, or wrongfully retained copies of their documents. When police investigated defendant after receiving a report from one of her victims, they found numerous copies of government issued identification cards and credit cards in a trash bag, concealed under a shed in her backyard. Nine of defendant's victims testified at trial. Counts as to three other victims were established without any victim testimony, based on documents found in defendant's possession. Defendant was convicted of possession of the personal identifying information of 10 or more victims under Penal Code section 530.5, subdivision (c) based, in part, on documents belonging to victims who did not testify at trial. Defendant was sentenced to a total of 10 years in prison. None of the counts was stayed under section 654.

On appeal, defendant contends that only one grand theft conviction per victim may stand under *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*), instead of multiple counts based on her charges to different credit cards. Defendant also contends that she may only be convicted of one count of fraudulent retention of access card information (Pen. Code, § 484e, subd. (d)) for each victim, because the access cards were taken in the same transaction.

Next, defendant contends there was insufficient foundation under Evidence Code section 1280 for the admission of documents belonging to victims who did not testify at trial, and even if the evidence was properly admitted, it was insufficient to support her conviction for various counts. She also contends the jury was not adequately instructed on one of the burglary counts, and that the trial court committed sentencing error under Penal Code section 654. We agree that one count of grand theft must be reversed. We

---

[1] Nine of the victims testified at trial. Eight of them were assisted by either Mandarin or Cantonese language interpreters, and spoke little or no English.

also agree that four counts should have been stayed under section 654.  We otherwise affirm the judgment below.

## FACTS

### 1.      Liqin Guo and Yuan Zhao (Counts 1-4)

With respect to victim Liqin Guo, the jury convicted defendant of one count of residential burglary (Pen. Code, § 459; count 1) and found true the special allegation that the crime was a violent felony under section 667.5, subdivision (c)(21) because Ms. Guo was present during the commission of the crime.

With respect to victim Yuan Zhao, the jury convicted defendant of one count of grand theft of access card information (Pen. Code, § 484e, subd. (d); count 2), and two counts of grand theft by use of illegally obtained access card (§ 484g, subd. (a); counts 3 & 4).

In May 2012, Liqin Guo and Yuan Zhao lived on Florence Avenue in Monterey Park (Ms. Zhao was temporarily living with Ms. Guo).  Ms. Guo was looking for a new mortgage loan, because the interest rate on her existing loan was high.  At the time, her credit rating was not very good.  Ms. Zhao was looking for a $10,000 loan to remodel her home.  Ms. Guo found defendant's advertisement in a newspaper, and called to see if defendant could help her secure a loan.

Defendant met Ms. Guo and Ms. Zhao at Ms. Guo's home.  At the meeting, defendant asked to see their credit cards, identification, and social security cards. Ms. Guo gave defendant two credit cards.  Ms. Zhao also gave defendant several credit cards.  Defendant took the credit cards, licenses, and social security cards with her when she left, telling Ms. Guo that she would contact the credit card companies to secure a loan, and would use the cards to check her credit.  Defendant told Ms. Guo that she would charge a fee between 10 and 40 percent of any loan she was able to procure.  The following day, defendant returned the cards, telling Ms. Guo that her credit was poor and she could not help her.  Ms. Guo did not give defendant permission to use her credit cards; she only consented to defendant's help in getting her a loan.

According to Ms. Zhao, defendant made a photocopy of her driver's license and social security card.  The day after the meeting, defendant told Ms. Zhao that her credit

was good, and that she could procure a loan of $700. However, defendant told Ms. Zhao that her fee for obtaining the loan would be 60 percent of the loan's value. Ms. Zhao decided that she did not want the loan, and asked defendant to return her credit cards. Defendant initially returned only one of Ms. Zhao's credit cards; eventually, she also returned the other cards.

Ms. Zhao noticed unusual charges on her cards. Her Bank of America card had two charges from Sunshine Global Trading, for $860 and $1,100. The charges were made on May 14, 2013, at 9:29 a.m. and 4:38 p.m., respectively. Ms. Zhao's Citibank card also was charged by Sunshine Global Trading on May 14, for $1,400 and $1,200, at 9:32 a.m. and 4:58 p.m., respectively. Additionally, Ms. Zhao's Costco American Express card was charged on May 14 by Sunshine Global Trading, for $2,100 and $300, at 9:35 a.m. and 4:42 p.m., respectively. Ms. Zhao did not authorize any of these charges.

Police later found carbon copies of three credit card transactions for Ms. Zhao in a garbage bag concealed on defendant's property. They also found six credit card receipts (including a merchant copy and a customer copy) for the May 14 transactions on Ms. Zhao's credit cards.

## 2.     Ting Wei Sun (Count 23)

With respect to victim Ting Wei Sun, the jury convicted defendant of one count of grand theft of access card information (Pen. Code, § 484e, subd. (d); count 23). Sometime between February and July 2012, Mr. Sun was looking for a loan. He responded to defendant's ad in a Chinese language newspaper. He met defendant at a supermarket in Monterey Park. He gave defendant his debit card, and a copy of his driver's license. Defendant told Mr. Sun she needed his credit card to procure a loan. Defendant took Mr. Sun to Best Buy to open a credit account, but he was denied. She then took him to Walmart to apply for credit, and he was approved. Defendant purchased a $150 gift card with the Walmart credit, and gave Mr. Sun $90 cash. Defendant told Mr. Sun her fee for the loan was 40 percent. Mr. Sun decided he did not want any more loans from defendant, and she returned his debit card.

4

Police later found a photocopy of Mr. Sun's driver's license, as well as a photocopy of a Wells Fargo Visa debit card in his name, in the garbage bag hidden on defendant's property.

### 3.     Wu Wei Tian (Count 25)

No separate counts were charged as to victim Wu Wei Tian. Instead, he was one of the 10 victims of the crime charged in count 25, under Penal Code section 530.5, subdivision (c). In July 2012, Mr. Tian was looking for a $100,000 business loan for his restaurant, and found defendant's ad in a newspaper. Mr. Tian met defendant at a coffee shop in Alhambra. Defendant assured Mr. Tian she could help him get a loan for $50,000 to $100,000, and asked for his business records, credit cards, identification, social security card, and company checks. Mr. Tian provided the requested documents, and defendant returned them to him a week later. Mr. Tian did not give defendant permission to use his accounts or credit cards for any purpose other than obtaining a loan, nor did he authorize her to retain his information. Defendant never provided Mr. Tian with a loan, and he did not discover any fraudulent activity on his accounts.

Police found copies of a bank statement and a credit card for Mr. Tian's business in the garbage bag hidden on defendant's property.

### 4.     Bang Wong (Count 25)

Bang Wong was another of the 10 victims of defendant's crime charged in count 25. In July 2012, Mr. Wong was looking for a $10,000 to $20,000 business loan when he found defendant's ad in a Chinese language newspaper. Defendant came to his factory in El Monte. Defendant had Mr. Wong complete a loan application. He provided defendant with business records, and copies of his driver's license and social security card. Defendant never provided Mr. Wong with a loan, or contact him further about his loan application. He did not give defendant permission to retain his information.

Police later found copies of Mr. Wong's driver's license, social security card, and business records in the bag hidden at defendant's home.

### 5.     Chun Ouyang (Count 21)

With respect to victim Chun Ouyang, the jury convicted defendant of one count of grand theft of access card information (Pen. Code, § 484e, subd. (d); count 21). In

September 2012, Mr. Ouyang's friend was looking for a loan. Mr. Ouyang's friend found defendant through a Chinese newspaper ad, and asked Mr. Ouyang to provide his identification and credit card to help the friend secure a loan. Mr. Ouyang and his friend met with defendant at a bank, and Mr. Ouyang provided his credit card and driver's license to defendant. Defendant took these items and went inside the bank to apply for credit there. Defendant also took Mr. Ouyang and his friend to Best Buy to apply for credit, representing that this would help the friend procure a loan. Defendant spoke to the employees at Best Buy; Mr. Ouyang did not understand what was said as he does not speak English. Defendant completed the credit application for Mr. Ouyang. Defendant then purchased $500 in gift cards on the new line of credit. Mr. Ouyang became suspicious. Mr. Ouyang never received any money from defendant, but his friend eventually received $300. Mr. Ouyang did not give defendant permission to keep copies of his information.

Police later found copies of Mr. Ouyang's driver's license, social security card, and credit card in the garbage bag hidden on defendant's property.

### 6. Ping Guo (Counts 5, 6, 7 & 9)

With respect to victim Ping Guo, the jury convicted defendant of one count of grand theft by use of illegally obtained access card (Pen. Code, § 484g, subd. (a); count 5), one count of grand theft of Mr. Guo's access card information (his American Express card) (§ 484e, subd. (d); count 6), and two counts of grand theft (for taking Mr. Guo's money) (§ 484, subd. (a); counts 7 & 9). In October 2012, Mr. Guo was looking for a $10,000 loan to pay for his brother's cancer treatment in China. He found defendant's ad in a Chinese language newspaper, offering a quick loan. Mr. Guo met with defendant at a Vons supermarket in Hacienda Heights. Defendant said she could help him obtain a loan for $5,000. Defendant told Mr. Guo her fee would be 10 percent of the loan. Mr. Guo gave defendant his Bank of America bank card and driver's license. He later gave her his Costco American Express card.

Defendant later told Mr. Guo she had charged $2,500 on his American Express card. He did not authorize this transaction. A receipt from this transaction, found in defendant's possession, revealed that this charge was made on October 5, 2012. On

6

October 5, 2012, defendant had taken Mr. Guo to Best Buy, and several days later to Fry's Electronics, to apply for lines of credit in Mr. Guo's name. (For these crimes, defendant was also convicted of commercial burglary of Best Buy and Fry's (Pen. Code, § 459; counts 8 & 10).)

Mr. Guo was present when these applications were made, but did not understand what was going on. Defendant purchased 10 small appliances on Mr. Guo's new Best Buy card. Defendant also purchased four iPads at Fry's with Mr. Guo's new card, for a total of $2,151.15. Also on October 5, defendant took Mr. Guo to Citibank to open a bank account with $200 of Mr. Guo's money, and defendant used the account to make an electronics purchase.

Defendant promised to give Mr. Guo money from these transactions, but he did not receive any money from her. After six months, Mr. Guo complained that his brother was going to die, and defendant started giving him some money, in small increments. She gave him a total of $1,500.

The police later found a carbon copy of a credit card transaction for Mr. Guo, a copy of Mr. Guo's American Express card and driver's license, a credit card receipt for charges to Mr. Guo's American Express card made by Sunshine Global Trading, and a copy of a temporary shopping card issued by Fry's to Mr. Guo, in the garbage bag concealed on defendant's property.

### 7.     Paul Lung (Count 19)

With respect to victim Paul Lung, the jury convicted defendant of one count of grand theft of access card information (Pen. Code, § 484e, subd. (d); count 19). In early 2013, Mr. Lung was trying to obtain an emergency loan for $30,000. He saw defendant's ad in a Chinese newspaper. Mr. Lung met with defendant in a hotel in Monterey Park, and gave her his social security number and a credit card. Defendant told Mr. Lung that her fees ranged from 20 percent to 40 percent, depending on how fast he wanted the money. A couple of days later, Mr. Lung had second thoughts, and instructed defendant to stop the loan process. He did not give defendant permission to use his credit card for any purpose other than procuring a loan. She returned his credit card the day after he told

7

her he was no longer interested in the loan. He did not give defendant permission to retain copies of his credit card, identification, or social security card.

Police found a photocopy of Mr. Lung's driver's license and a CreditOne Visa credit card in the garbage bag hidden on defendant's property.

### 8. Jenny You (Counts 14-17)

With respect to victim Jenny You, the jury convicted defendant of three counts of grand theft of access card information (Pen. Code, § 484e, subd. (d); counts 14-16), and one count of petty theft for taking Ms. You's money (§ 484, subd. (a); count 17). In early 2013, Ms. You was looking for a loan of $20,000 to purchase supplies for her business. She found defendant's ad in a Chinese language newspaper. Defendant met Ms. You at her business in El Monte. Defendant requested Ms. You's driver's license, social security card, and credit cards, but did not have Ms. You fill out any credit applications. Ms. You provided the requested documents, including several credit cards. Defendant told Ms. You she needed the credit cards to check her credit. Defendant took Ms. You's documents, and about a week later, brought Ms. You approximately $5,600 cash. Defendant told Ms. You that her charge for the loan was 30 percent. On January 10, 2013, three unauthorized charges were made to Ms. You's credit cards by Sunshine Global Trading; one for $5,900 made at 2:16 p.m. to her CitiBank card, another for $1,100 made at 7:13 p.m. to her Bank of America Power Rewards card, and a third for $1,000 made at 7:15 p.m. to her Bank of America Cash Rewards card. There were other suspicious charges on her accounts, such as fees for a newspaper advertisement. Ms. You did not give defendant permission to charge her credit cards.

Police found copies of Ms. You's driver's license, three credit cards, credit card receipts for three transactions on those cards by Sunshine Global Trading, and two carbon copies of credit card transactions in the garbage bag hidden on defendant's property.

### 9. Police Investigation

In June 2013, Monterey Park Police Officer Bing Han was assigned to investigate a report made by Ms. Zhao concerning unauthorized charges to her credit cards. Officer Han researched Sunshine Global Trading Incorporated, and discovered that defendant was listed as the corporate officer, and that the company had a physical address in

8

Hacienda Heights. When Officer Han went to the registered address, the business was not located there, and the people at the location had never heard of Sunshine Global Trading. Officer Han located a La Puente address for defendant, and contacted her there on July 12, 2013.

Defendant was in her truck when Officer Han arrived. A search of defendant's truck revealed three mobile phones, a wallet with $440 cash, a box for a credit card machine, and a box containing carbon credit card slips.

Defendant admitted she was the owner of Sunshine Global Trading. Defendant told Officer Han that Sunshine Global Trading was an electronics business. The business was equipped with a credit card machine, and defendant was the only person who had access to it. Officer Han asked defendant about the charges to Ms. Zhao's credit cards, and defendant said they were charges for computers she had sold to Ms. Zhao. Ms. Zhao was unhappy with the purchase and tried to make a return, but defendant would not accept the computers. Officer Han asked defendant if her business made loans, or if defendant offered loans, and defendant denied any involvement with loans.

Defendant gave Officer Han consent to search her home for the credit card receipts from Ms. Zhao's computer transaction. Defendant took Officer Han to a storage shed in her backyard. She retrieved a black trash bag concealed underneath the shed. As defendant searched in the bag to recover the credit card slips, Officer Han noticed that the bag contained many credit card slips, photocopies of driver's licenses and social security cards, and several credit cards. Defendant told Officer Han that the credit cards belonged to a former customer who no longer needed the cards. The plastic bag included numerous documents pertaining to victims Zhao, Tian, Wong, Ouyang, Ping Guo, Lung, You, and Sun.

Officer Han asked defendant whether she had a credit card machine. Defendant initially told Officer Han that she gave it away to a friend, but then admitted that she still had it. She retrieved the machine hidden in some bushes near a section of fence in her backyard. The machine was stored in a plastic bag. When Officer Han asked defendant why the documents and credit card machine were stored in plastic bags in her backyard,

9

she responded that she hid them there to keep them safe because the police were looking for her.

**10.    Other Victims Who Did Not Testify (Counts 11, 12, 13, 18, 20, 25)**

Officer Han found documents for other individuals in the garbage bag. He testified that he found copies of Haisheng Ma's driver's license, social security card, and credit card. He also found copies of Hui Ling Zhang's driver's license and three credit cards, as well as the physical credit cards. Additionally, Officer Han found a copy of Na Li's driver's license and Citibank MasterCard. Also inside the bag was a photocopy of the driver's license of Xiufang Ye, and four of her credit cards. Additionally driver's licenses and some social security cards belonging to Doncheng Liang, Tonny Pien, Melinda Chen, and Hong Wei Dai were found in the bag.

With respect to victim Haisheng Ma, the jury convicted defendant of one count of grand theft of access card information (Pen. Code, § 484e, subd. (d); count 20). With respect to victim Hui Ling Zhang's, the jury convicted defendant of three counts of grand theft of access card information (one count for each of the three credit cards found) (§ 484e, subd. (d); counts 11-13). With respect to victim Na Li, the jury convicted defendant of one count of grand theft of access card information (§ 484e, subd. (d); count 18). Xiufang Ye, Doncheng Liang, Tonny Pien, Melinda Chen, and Hong Wei Dai were some of the victims forming the basis of defendant's conviction for count 25, for possessing information belonging to 10 or more people.

**11.    Defendant's Testimony**

Defendant testified that her business, Sunshine Global Trading, did both trading and mortgage loans. She had relationships with six or seven "big banks." Defendant helped victims Wong, Lung, Ouyang, Liqin Guo, Zhao, You, and Ping Guo apply for loans. Her fees were 10 percent, which she sometimes charged to the client's credit card, with their permission. However, she generally refunded the money if she was unable to secure a loan. She was unable to procure any loans for these clients.

## DISCUSSION

### 1. Sufficiency of the Evidence of Multiple Grand Theft Convictions for Yuan Zhao and Ping Guo

As described above, for her crimes against Yuan Zhao, defendant was convicted of two counts of grand theft involving access card information; and for her crimes against Ping Guo, defendant was convicted of three counts of grand theft involving access card information. Defendant contends that she may only be convicted of one count with respect to each victim for grand theft involving use of their access card information. Thus, she contends one of the two counts for the offense against Ms. Zhao must be reversed, and two of the counts for the offense against Ping Guo must be reversed. Defendant contends the grand theft convictions for each victim flow from the same misrepresentation, and there was insufficient evidence that she harbored more than one intent when committing the thefts. Therefore, defendant reasons her multiple convictions are barred by *Bailey*, *supra*.

" 'In reviewing the sufficiency of evidence . . . , the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' . . . 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must . . . presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.] The same standard also applies in cases in which the prosecution relies primarily on circumstantial evidence. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1175.) The reviewing court does not reweigh the evidence, evaluate the credibility of witnesses, or decide factual conflicts. (*People v. Culver* (1973) 10 Cal.3d 542, 548.) Nevertheless, "mere speculation cannot support a conviction. [Citations.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 35.) On the other hand, a finding that "the circumstances also might reasonably be reconciled with a contrary finding would not warrant reversal of the judgment." (*People v. Proctor* (1992) 4 Cal.4th 499, 528-529.)

11

In *Bailey*, the defendant received a series of welfare payments based on one fraudulent statement. Each individual welfare payment that the defendant received amounted only to a petty theft, but she was charged and convicted of a single count of grand theft, as the total amount of all the thefts, when aggregated, constituted felony grand theft. (*Bailey*, *supra*, 55 Cal.2d at pp. 515-516, 518.) On appeal, the Supreme Court concluded that a single conviction for grand theft was proper. In answering the question of whether multiple petty thefts could be aggregated to constitute one count of grand theft, the *Bailey* court reasoned that, "[s]everal recent cases involving theft by false pretenses have held that where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute . . . one offense of grand theft. [Citations.] The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. The same rule has been followed in larceny and embezzlement cases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. [Citations.]" (*Bailey*, *supra*, 55 Cal.2d at pp. 518-519.)

The court additionally stated its view that "[w]hether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (*Bailey*, *supra*, 55 Cal.2d at p. 519.) Relying on this language in *Bailey*, subsequent appellate decisions interpreted *Bailey* to prohibit multiple convictions for grand theft when individual thefts were committed against a single victim with one intent, general impulse, and plan. (See, e.g., *People v. Jaska* (2011) 194 Cal.App.4th 971, 981 (*Jaska*); *People v. Tabb* (2009) 170 Cal.App.4th 1142, 1148-1149.)

Our Supreme Court recently revisited its holding in *Bailey*, rejected the expansion of its holding, and held that a defendant may be convicted of multiple counts of grand theft for separate and distinct acts of grand theft, even if "pursuant to a single overarching

12

scheme." (*People v. Whitmer* (2014) 59 Cal.4th 733, 741 (*Whitmer*).) In *Whitmer*, the defendant was the manager of a motorcycle dealership, and arranged for the fraudulent sale of vehicles to fictitious buyers. The jury convicted him of 20 counts of grand theft for 20 fictitious sales. The 20 sales occurred on 13 different dates. Some of the transactions occurred on the same date, and involved the same fictitious buyer; however, separate paperwork was completed for each transaction. (*Id*. at pp. 734-735.) The *Whitmer* court concluded multiple grand theft convictions were proper because "defendant committed a series of separate and distinct, although similar, fraudulent acts in preparing separate paperwork and documentation for each fraudulent transaction." (*Id.* at pp. 735, 741-742.)

*Whitmer*'s holding expressly states that it is not to be applied retroactively, finding that because "numerous, and uncontradicted, Court of Appeal decisions over a long period of time . . . reached a conclusion contrary to ours, we [therefore] believe today's holding is . . . an unforeseeable judicial enlargement of criminal liability for multiple grand thefts [and] may not be applied to defendant." (*Whitmer*, *supra*, 59 Cal.4th at p. 742.) Also, the *Whitmer* court concluded that the defendant's convictions could not be affirmed under *Bailey*, based on a finding that there were sufficient facts that he harbored separate intents as to the transactions, because the jury had also convicted defendant under Penal Code section 12022.6, subdivision (b), an element of which is that defendant's offenses were committed pursuant to a "common scheme or plan." (§ 12022.6, subd. (b); *Whitmer*, at p. 742.)

In this case, unlike in *Whitmer*, the jury was not asked to find, and did not find, that defendant's crimes were committed pursuant to a common scheme or plan. Therefore, her conviction for multiple counts of grand theft against Ms. Zhao and Mr. Guo may stand if there is any evidence from which the jury could have concluded that she harbored separate intents, impulses and plans for the crimes under *Bailey* and its progeny. (*People v. Jaska*, *supra*, 194 Cal.App.4th at p. 984 ["It is well settled that '[t]he *Bailey* doctrine applies as a matter of law only in the absence of any evidence from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan.' "].)

13

"[T]he following types of evidence are relevant in determining whether a defendant acted pursuant to a single intent in committing a series of thefts: whether the defendant acted pursuant to a plot or scheme (e.g., [*People v.*] *Richardson* [(1978)] 83 Cal.App.3d [853,] 858 [discussing 'scheme' to steal city's money]; [*People v.*] *Brooks* [(1985)] 166 Cal.App.3d [24,] 31 [convictions stemmed from 'a common scheme' to steal auction proceeds]); whether the defendant stole a defined sum of money or particular items of property (e.g., [*People v.*] *Kronemyer* [(1987)] 189 Cal.App.3d [314,] 364 ['plan included unlawfully taking all the savings accounts assets']); whether the defendant committed the thefts in a short timespan (e.g., [*People v.*] *Gardner* [(1979)] 90 Cal.App.3d [42,] 48 [convictions all stemmed from carcasses stolen during single hunting trip]) and/or in a similar location ([*In re*] *Arthur V.* [(2008)] 166 Cal.App.4th [61,] 69 [acts occurred 'within a very brief time period, in the same approximate location']); and . . . whether the defendant employed a single method to commit the thefts (e.g., [*People v.*] *Packard* [(1982)] 131 Cal.App.3d [622,] 625 [defendant repeatedly defrauded company by submitting phony invoices])." (*Jaska*, *supra*, 194 Cal.App.4th at pp. 984-985.) Moreover, post-*Bailey* cases reversing multiple grand theft convictions did so only when "*the only reasonable conclusion* supported by the record is that appellant had a single continuing plan or scheme." (See, e.g., *People v. Packard*, at p. 627, italics added.)

Here, substantial evidence supports each of defendant's convictions for the crimes committed against Mr. Guo. Count 5 was based on the October 5, 2012 charge to Mr. Guo's American Express card. Counts 7 and 9 were based on the transactions at Best Buy and Fry's. The October 5 transactions occurred at different locations and different times, and were very different transactions. The charge to the American Express card was made on defendant's credit card machine. The charges to his Best Buy card arose when defendant took Mr. Guo to a Best Buy store, and opened a new line of credit in his name. The Fry's transactions occurred on an entirely different day at a different location. These facts clearly support the reasonable inference that defendant harbored multiple intents when engaging in these very different transactions. (*People v. Jaska*, *supra*, 194 Cal.App.4th at pp. 984-985.) Therefore, defendant has failed to demonstrate that her

14

crimes necessarily arose only pursuant to one intention under *Bailey*. (*Jaska*, *supra*, at pp. 984-985.)

However, we agree that defendant may be convicted of only one count of grand theft for the crime committed against Ms. Zhao. Count 3 was based on the May 14, 2012 charges to her Bank of America card, and count 4 was based on charges made that same day to her CitiBank credit card. Defendant used the Bank of America card to charge $860 at 9:29 a.m. and the Citibank credit card to charge $1,400 only three minutes later, at 9:32 a.m. That afternoon, defendant charged $1,100 to the Bank of America Card at 4:38 p.m. and charged $1,200 to the Citibank card 20 minutes later, at 4:58 p.m. All four charges were credited to Sunshine Global Trading. The only reasonable inference from this evidence is that defendant acted pursuant to a single continuing plan to use Ms. Zhao's credit cards on May 14, 2012, to make fraudulent charges with the intent to benefit her company, Sunshine Global Trading, swiping two cards within minutes in the morning, and the same two cards within minutes in the afternoon. Therefore, the conviction on count 3 must be reversed.

## 2. Multiple Convictions Under Penal Code Section 484e, Subdivision (d)

Defendant also contends that only one Penal Code section 484e, subdivision (d) conviction can stand as to each victim in counts 11, 12 and 13 (Ms. Zhang's was the victim in these counts) and counts 14, 15, and 16 (Ms. You was the victim in these counts). Defendant argues that the theft of each victim's access card information occurred as part of a single transaction because she obtained all the access card information at the same time from each victim. Although this argument is similar to defendant's *Bailey* argument, discussed *ante*, it is conceptually different. Defendant's cited cases focus on whether the defendant's crimes were part of the same *transaction*, rather than committed pursuant to the same *intent* or *scheme*. (See, e.g., *People v. Nor Woods* (1951) 37 Cal.2d 584, 586 [only one grand theft count could stand based on defendant used car dealer's acceptance of cash and a trade in for a 1949 Ford that was encumbered by liens, because the cash and trade in were part of the same transaction whereby defendant defrauded the victim of the purchase price of the 1949 Ford]; see also *People v. Rader* (2014) 228 Cal.App.4th 184, 192 [only one petty theft conviction could

15

stand when each count for which the defendant was convicted "involve[d] the same theft of the identical meal on a single occasion at the Outback Steakhouse on May 25, 2012"]; *In re Johnson* (1966) 65 Cal.2d 393, 394-395 [two drug deliveries, which were part of the same transaction, constituted only one drug sale].)

This case is distinguishable from the cited cases, because regardless of whether defendant obtained the cards at the same time, she obtained *multiple* cards from each victim. Defendant's convictions do not rest on the singular act of taking her victims' credit cards, but the fact that she took multiple cards from each victim, which increased her culpability, and the potential harm to each of her victims. In sharp contrast, defendant's cited cases involve only one wrongful act. (*People v. Nor Woods*, *supra*, 37 Cal.2d at p. 586 [victim deceived out of purchase price of a car]; *People v. Rader*, *supra*, 228 Cal.App.4th at p. 192 [victim deceived out of a meal]; *In re Johnson*, *supra*, 65 Cal.2d at pp. 394-395 [defendant engaged in one drug sale, made in two deliveries].)

Moreover, Penal Code section 484e, subdivision (d) clearly contemplates punishing a defendant for each "access card account" possessed rather than each victim, regardless of the number of cards acquired. Specifically, section 484e, subdivision (d) provides "[e]very person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

In contrast, Penal Code section 484e, subdivision (b) provides that "[e]very person, other than the issuer, who within any consecutive 12-month period, acquires access cards issued in the names of four or more persons which he or she has reason to know were taken or retained under circumstances which constitute a violation of subdivision (a), (c), or (d) is guilty of grand theft." (See *People v. Shabtay* (2006) 138 Cal.App.4th 1184, 1191 [plain language of Penal Code section 484e, subdivision (b) precludes multiple convictions where the prosecution alleges that a defendant acquired access cards within any consecutive 12-month period].)

Subdivision (d), under which defendant was convicted, contains no similar limitation to subdivision (b). Moreover, section 484e, subdivision (d) may be violated by

16

the unlawful *retention* of access card information. Here, defendant not only stole the victims' access card information, she also retained it. It is irrelevant to the subdivision (d) offense whether or not defendant obtained all the access card information from each victim at the same time.

### 3. Counts for Victims Who Did Not Testify at Trial

The prosecutor was permitted to introduce into evidence documents which were found in the garbage bag on defendant's property and belonged to people who did not testify at trial. Defendant objected on the basis of insufficient foundation and hearsay. The court found there was sufficient foundation for the credit cards because there were corresponding driver's licenses and social security cards to establish that the cards belonged to actual people.

### a. Foundation under Evidence Code section 1280 for counts 11, 12, 13, 18, 20, and 25

Defendant contends the trial court abused its discretion when it admitted documentary evidence in support of these counts, reasoning that the foundational requirements of Evidence Code section 1280 were not satisfied. Section 1280 provides that "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee[;] [¶] (b) The writing was made at or near the time of the act, condition, or event[;] [¶] [and] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Evidence Code section 1280 " 'permits the court to admit an official record or report without necessarily requiring a witness to testify as to its identity and mode of preparation if the court takes judicial notice or if sufficient independent evidence shows that the record or report was prepared in such a manner as to assure its trustworthiness.' " (*People v. George* (1994) 30 Cal.App.4th 262, 274.) Moreover, "a court may rely on the rebuttable presumption that official duty has been regularly performed (Evid. Code,

17

§ 664) as a basis for finding that the foundational requirements of Evidence Code section 1280 are met.' [Citation.]" (*People v. George*, at p. 274.)

" 'This presumption shifts the burden of proving the foundational issue of trustworthiness of the method of preparing the official writing to the party objecting to the admission of the official writing. [Citation.]' [Citation.]" (*People v. Martinez* (2000) 22 Cal.4th 106, 130.) " 'Whether the trustworthiness requirement has been met is a matter within the trial court's discretion.' " (*People v. George*, *supra*, 30 Cal.App.4th at p. 274.) A trial court's ruling on admissibility does not require formal factual findings, and " 'implies whatever finding of fact is prerequisite thereto.' " (*People v. Martinez*, at p. 120.)

Here, the challenged exhibits appeared on their face to be genuine. The photocopies of the identification and social security cards had all the details found in original documents of that nature. The documents on their face were sufficient to support the inference that official duties had been regularly performed. And, in any event, the trial court could properly rely on the rebuttable presumption arising under Evidence Code section 664 concerning the identification and social security cards, which defendant made no effort to rebut. (*People v. George*, *supra*, 30 Cal.App.4th at p. 274.) Moreover, the bank and credit cards were issued in the names of the victims as to whom the prosecution also offered state or federal issued identification cards. These documents also appeared authentic, having all the details of the original cards, and were stored with other documents and credit cards which were indisputably valid, based on the testimony of the witnesses. On this record, we can find no abuse of discretion.

### b. Sufficiency of the evidence for counts 11, 12, 13, 18, and 20

Defendant was convicted in these counts for retaining the access card account information of Hui Ling Zhang, Na Li, and Haisheng Ma, in violation of Penal Code section 484e, subdivision (d). None of these victims testified at trial. These counts were established only with documents found in the trash bag at defendant's home.

As discussed in part 2, *ante*, California Penal Code section 484e, subdivision (d) provides that "[e]very person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the

18

cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." The term "validly issued to another person" "encompasses all access cards that have at one time been validly issued to a person. Accordingly, it excludes counterfeit, incomplete, and blank access cards." (*People v. Molina* (2004) 120 Cal.App.4th 507, 516.)

Defendant contends the prosecutor did not present evidence establishing that the cards were validly issued because no consumer testified the cards were issued to them. For this same reason, she contends there was no evidence that defendant had not obtained the consent of the card owners. No case holds that victim testimony is the only means of establishing these elements of the offense. Instead, it is well settled that "[c]ircumstantial evidence is as sufficient to convict as direct evidence." (*People v. Reed* (1952) 38 Cal.2d 423, 431; see also *People v. Bradford* (1997) 15 Cal.4th 1229, 1329.) Here, the cards were found in a plastic garbage bag, concealed under a shed in defendant's backyard. The credit cards for these victims were accompanied by driver's licenses, indicating that the cards belonged to real people and were not merely counterfeit. The cards appeared, on their face, to be authentic. That the cards were concealed in a trash bag, along with the cards and information of the many victims who testified, reasonably supports an inference that they were held without the cardholders' consent. Moreover, defendant admitted to officer Han that she hid the items because she knew police were looking for her. Defendant's conduct was wholly inconsistent with a finding that she had obtained any of these victims' consent.

c.    **Sufficiency of the evidence for count 25**

Count 25 charged defendant with acquiring or retaining the personal identifying information or 10 or more persons. (Pen. Code, § 530.5, subd. (c)(3).)[2] Section 530.5, subdivision (c)(3) provides that "[e]very person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of 10 or more other persons is guilty of a public offense, and upon

---

[2]    During closing argument, the prosecutor told the jury that in addition to the people who testified (such as Wu Wei Tian and Bang Wong and others), this count was also based on defendant's possession of documents belonging to Xiufang Ye's, Doncheng Liang, Tonny Pien, Melinda Chen, and Hong Wei Dai.

conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170." Here, nine victims testified, and documentary evidence consisting of social security cards and driver's licenses was introduced for seven other victims who did not testify.

Defendant contends that without victim testimony, there was no evidence to establish that the personal identifying information belonged to "real" people, or was obtained or retained without consent. Defense counsel made these arguments at trial, and the jury rejected them. The driver's licenses and social security cards which formed the basis of this count appeared authentic, and were secreted away with other documents for which ample testimony was introduced to demonstrate that the information was retained without consent.

## 4.      Instructional Error for Burglary Conviction

The complaint alleged the burglary charged in count 1 was a violent felony within the meaning of Penal Code section 667.5, subdivision (c)(21) because "another person, other than an accomplice, was present in the residence during the commission of the . . . offense." This count was based on defendant's entry into Liqin Guo's home where she met with Ms. Guo and Ms. Zhao. In their verdict form, the jury found true that Ms. Guo was present during the commission of the burglary. No instruction concerning the necessary findings for section 667.5, subdivision (c)(21) was provided to the jury.

Penal Code section 667.5, subdivision (c)(21) provides that the term "violent felony" includes: "Any burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." Defendant contends the jury's finding that the burglary constituted a violent felony must be reversed because the jury was not asked to find that Ms. Guo was not an accomplice, and because the trial court failed to provide an instruction guiding the jury in making its finding.

Respondent contends that the claimed error was forfeited, as defendant did not ask for additional instructions or clarification of the instructions. However, " '[t]he trial court

must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all elements of a charged offense. [Citation.]' [Citation.] This rule [also] applies to the 'elements' of an 'enhancement' " under section 667.5. (*People v. Winslow* (1995) 40 Cal.App.4th 680, 688.) Therefore, we do not find that defendant forfeited her claim of error.

In any event, defendant's claim lacks merit. Although the jury was not instructed about the elements of the section 667.5, subdivision (c)(21) enhancement, there is no possibility of a more favorable outcome had the jury been properly instructed. (See *People v. Mil* (2012) 53 Cal.4th 400, 411-412 [harmless error analysis may be applied when instruction omits elements of an offense, when the elements were uncontested and supported by overwhelming evidence].) The jury, by their verdict form, was properly asked to consider whether Ms. Guo was present during the burglary. The jury was clearly satisfied that Ms. Guo was present when the burglary was committed, as they found so on their verdict form. Moreover, all of the evidence indicated that Ms. Guo was a victim and not defendant's accomplice; there was absolutely no contrary evidence or argument at trial. Additionally, the jury was instructed that the People had the burden of proving all elements of their case against defendant beyond a reasonable doubt. Here, no rational trier of fact could have concluded that Ms. Guo was an accomplice. We therefore find no prejudicial error.

## 5. Penal Code Section 654 Error

Defendant contends her sentences on a number of counts must be stayed pursuant to Penal Code section 654. Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The protections of section 654 extend to situations in which several offenses are committed during an indivisible course of conduct. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1248.) In order to determine whether a course of conduct is indivisible, the court looks to "defendant's intent and objective, not the temporal proximity of his offenses." (*People v. Harrison* (1989) 48 Cal.3d 321, 335; see also

21

*People v. Hicks* (1993) 6 Cal.4th 784, 789.)  If all the offenses are incidental to, or the means of accomplishing or facilitating a single objective, the defendant may be punished for any one offense but not more than one.  (*People v. Harrison*, at p. 335.)

"On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.  [Citations.]  . . .  Each case must be determined on its own facts.  [Citations.]  The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them.  [Citations.]"  (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135-1136.)  If the court makes no express finding on the issue, a finding that the crimes were divisible "inheres in the judgment" and must be upheld if supported by substantial evidence.  (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

### a.      Count 25

Defendant contends Penal Code section 654 bars sentencing on count 25 because she was already punished separately for counts relating to victims that were also victims of the crime charged in count 25 (willfully acquiring and retaining the personal identifying information for 10 or more persons; § 530.5, subd. (c)(3)).  The prosecution presented evidence that defendant possessed the personal identifying information of 16 different victims.  Nine of those 16 victims were named as the victims in counts for which defendant was also convicted of acquiring or retaining access card information (§ 484e, subd. (d)).  Seven victims were not specifically named in any counts, and based on the prosecutor's closing argument, their information was introduced into evidence solely in support of count 25.  Therefore, the victims of the crime in count 25 of willfully acquiring and retaining the personal information of 10 or more persons (§ 530.5, subd. (c)(3)) necessarily included at least three of the same victims of the crime charged in other counts of acquiring or retaining access card information (§ 484e, subd. (d)).

22

Nevertheless, we find no Penal Code section 654 error. Sections 484e and 530.5 involve different conduct, from which different intents are readily ascertainable. Section 530.5, subdivision (d) proscribes "acquir[ing] or retain[ing] possession of the personal identifying information, . . . of 10 or more other persons." Section 530.55 defines personal identifying information as a state driver's license, a social security number, password, and alien registration number, among other information. On the other hand, section 484e, subdivision (d) proscribes "acquir[ing] or retain[ing] possession of access card account information. . . ." Access card account information is defined as "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by a paper instrument." (§ 484d, subd. (2).) Therefore, the statutes concern possession of different types of information.

The trial court could reasonably find different intents related to the possession of personal identifying information, versus access card information. For example, personal identifying information may be used to perpetrate identity theft of many different kinds, whereas access card information may only be used to make fraudulent charges or transfers of funds. We therefore find no section 654 error.

### b. Ms. Zhao

Defendant argues the trial court erred when it sentenced defendant on counts 2, 3, and 4 as to Ms. Zhao, reasoning that all of these charges stemmed from defendant's scheme to take Ms. Zhao's money. Defendant was convicted in count 2 for grand theft of access card information (Pen. Code, § 484e, subd. (d)) and in counts 3 and 4 for grand theft by use of illegally obtained access card (§ 484g, subd. (a)). As discussed *ante*, in part 1 of our discussion, we agree either count 3 or count 4 must be reversed because defendant acted pursuant to a single continuing plan to use Ms. Zhao's credit cards on May 14, 2012, to make fraudulent charges for the benefit of Sunshine Global Trading. However, we find no section 654 error by sentencing defendant for grand theft of access card information on count 2, as defendant may have harbored multiple different objectives when she obtained the stolen cards in violation of section 484e, subdivision

23

(d), only one of which she achieved by using the cards in violation of section 484g, subdivision (a).

### c.      Ping Guo

Defendant contends that she cannot be sentenced on counts 7 and 9 for the thefts from Ping Guo and also on counts 8 and 10 for the burglaries of Best Buy and Fry's. We find no error. The retail stores were the victims of the burglaries, while Mr. Guo was a victim of the thefts. This is compelling evidence of different intents; intent to steal from defendant, and the intent to divest the retailers of their property. (See, e.g., *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1781 [if there are multiple victims of a single course of conduct, even with a single objective, the defendant may be punished for crimes committed against each victim].)

### d.      Hui Ling Zhang's

Counts 11 through 13 were based on the three credit cards belonging to Ms. Zhang's which were found in the trash bag. Because Ms. Zhang's did not testify at trial, and there was no evidence that defendant ever used these credit cards, respondent concedes that there is no evidence supporting an inference that defendant harbored different intents. We agree that there is no evidence in the record before us about the circumstances under which these cards were obtained. We therefore agree that two of counts 11 through 13 should be stayed.

### e.      Jenny You

Lastly, defendant contends that two of counts 14, 15, and 16 for retaining Ms. You's access card account information must be stayed because all of her information was obtained at the same time. After fraudulently obtaining several of Ms. You's credit cards in early January 2013, on January 10, defendant made three unauthorized charges; one for $5,900 made at 2:16 p.m. to Ms. You's CitiBank card, another for $1,100 made at 7:13 p.m. to her Bank of America Power Rewards card, and a third for $1,000 made at 7:15 p.m. to her Bank of America Cash Rewards card, all to Sunshine Global Trading. We agree that defendant harbored a single criminal objective when she used Ms. You's credit cards on January 10, 2013, to make fraudulent charges for the benefit of Sunshine Global Trading. Therefore, two of these three counts must be stayed.

24

**DISPOSITION**

The judgment of conviction on count 3 is reversed.  The judgment of conviction on counts 12, 13, 15 and 16 is modified to reflect that defendant's sentence on those counts is stayed pursuant to Penal Code section 654.  In all other respects, the judgment is affirmed.  The trial court is directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.



RUBIN, J.